UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORGE LUIS LEAL,

    Petitioner,

       v.                                              Civil No. 24-cv-2254-JPG

UNITED STATES OF AMERICA,                             Criminal No. 19-cr-40069-JPG

    Respondent.

## MEMORANDUM AND ORDER

This matter comes before the Court on petitioner Jorge Luis Leal's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The Government has responded to the motion (Doc. 5), and Leal has replied to that response (Docs. 6 & 7).

## I.    Background

In August 2019, the petitioner was indicted on one count of attempted enticement of a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b) (No. 19-cr-40069-JPG, Doc. 16). The case grew out of communications on Grindr, a cellphone application known to be used by men looking to have sex with other men, between Leal and undercover FBI investigator Special Agent Michael Carter posing as a 15-year old boy named "Corey." Leal and "Corey" agreed meet at "Corey's" house, and Leal was arrested after he approached the house where Special Agent Carter indicated "Corey" lived. In a post-arrest interview, Leal made incriminating statements.

The case was tried to a jury in November 2021 where Leal asserted a defense of entrapment. At Leal's request, the Court instructed the jury using the William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit (2020) ("Pattern Instruction") 6.04 and 6.05 (modified) regarding entrapment (Defendant's Instructions 1 and 2). It also gave Pattern Instruction 3.19 regarding the Government's use of undercover and deceptive investigative

techniques (Government's Instruction 4).   It did not give any instruction requiring the jury to unanimously agree on (1) the substantial step taken toward the enticement or (2) which of the two entrapment elements the Government proved.   Nor did it give a limiting instruction on using character evidence only for the purpose of determining whether Leal was predisposed to commit the crime.   These and other facts underlying Leal's § 2255 will be discussed in more detail as necessary below.

The jury found the petitioner guilty (No. 19-cr-40069-JPG, Doc. 107).   In May 2022, the Court sentenced the petitioner to serve 120 months in prison, the statutory mandatory minimum sentence (No. 19-cr-40069-JPG, Doc. 133).

The petitioner appealed his conviction.   The Court of Appeals held that, by failing to object, Leal had waived the issue of whether Pattern Instruction 3.19 should have been reworded in light of the Court's also giving Pattern Instructions 6.04 and 6.05 as suggested in the Pattern Instruction Committee Comments.   *See United States v. Leal*, 72 F.4th 262, 266-67 (7th Cir. 2023).   It also rejected Leal's argument that there was insufficient evidence to defeat his entrapment defense.   *Id.* at 267-68.   The Court of Appeals affirmed the conviction on June 29, 2023.   It also denied a petition for rehearing and rehearing *en banc* on August 2, 2023, and issued the mandate on August 10, 2023 (No. 19-cr-40069-JPG, Docs. 158 & 159).   The petitioner did not seek a writ of *certiorari* from the United States Supreme Court.

## II.    § 2255 Motion

In his timely § 2255 motion, filed September 30, 2024, the petitioner raises the following claims:

Ground 1:    Counsel was constitutionally ineffective in violation of the petitioner's Sixth Amendment rights for failing to seek a sufficient instruction to the jury regarding

the meaning of "induce" in the statute of conviction;

Ground 2:    (a) The Government committed prosecutorial misconduct in violation of the petitioner's Fifth Amendment due process rights when it offered the instruction regarding Government investigative techniques; (b) Counsel was constitutionally ineffective in violation of the petitioner's Sixth Amendment rights by failing to object to that instruction, especially because the petitioner was asserting the defense of entrapment;

Ground 3:    (a) The Government committed prosecutorial misconduct in violation of the petitioner's Fifth Amendment due process rights when, in closing arguments, it improperly used the petitioner's socioeconomic status and a personal opinion of the his character to inflame the jury's passions against him; (b) Counsel was constitutionally ineffective in violation of the petitioner's Sixth Amendment rights by failing to object to these prosecutorial errors and by failing to request a limiting instruction to confine character evidence to the question of predisposition;

Ground 4:    Counsel was constitutionally ineffective in violation of the petitioner's Sixth Amendment rights by failing to object to jury instructions (a) that did not require unanimous agreement regarding the "substantial step" toward committing the offense and (b) that did not require unanimity regarding which of the two prongs of the entrapment defense—inducement or predisposition—the Government disproved; and

Ground 5:    (a) The Government enforced the statute of conviction in a discriminatory manner based on sexual orientation in violation of the petitioner's Fifth Amendment due process rights because it targeted a website with an audience focused on adult men seeking other adult men for sexual activity; (b) Counsel was constitutionally ineffective in violation of the petitioner's Sixth Amendment rights for failing to object to this selective prosecution.

Following review pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court ordered briefing on all issues.   Those arguments are now before the Court.

## III.    Analysis

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States."   28 U.S.C. § 2255(a).   However, "[r]elief under § 2255 is available 'only in extraordinary situations, such as an error of

3

constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"  *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)).   It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); *see Shipman v. United States*, 925 F.3d 938, 943 (7th Cir. 2019); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).   This case can be decided without an evidentiary hearing.

A.    Ineffective Assistance of Counsel

Many of Leal's challenges to his sentence rest on alleged instances of ineffective assistance of counsel.   The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."   U.S. Const. amend. VI.   This right to assistance of counsel encompasses the right to *effective* assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970); *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009).

A party claiming ineffective assistance of counsel bears the burden of showing (1) that his counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.   *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of the *Strickland* test, the petitioner must direct the Court to specific acts or omissions of his counsel.   *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009).   The Court must then consider whether, in light of all of the circumstances, counsel's performance was outside the wide range of professionally competent assistance.   *Id.*   "The

4

question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  The Court's review of counsel's performance must be "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689. Counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland*, 466 U.S. at 689.  The Court cannot become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

To satisfy the second prong of the *Strickland* test, the petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 694).  "That requires a substantial, not just conceivable, likelihood of a different result." *Thornell v. Jones*, 602 U.S. 154, 163 (2024) (internal quotations omitted).

B.    <u>Prosecutorial Misconduct</u>

A substantial number of Leal's challenges rest on assertions of prosecutorial misconduct at and prior to his trial in violation of his Fifth Amendment due process rights.  Defendants have a Fifth Amendment due process right to a fair trial.  Prosecutors who commit misconduct may violate those due process rights if their conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (internal quotations omitted).  For example, prosecutorial misconduct can occur when the Government fails to honor a promise in a plea agreement or other pretrial promised, *see*

*Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017), or when the Government makes improper statements to the jury that "poison[] the entire atmosphere of the trial," *Patel v. United States*, 19 F.3d 1231, 1237 (7th Cir. 1994).

Whether misconduct actually deprived a defendant of a fair trial depends on evaluation of the trial as a whole, including,

> 1) whether the prosecutors' statements manipulated or misstated the evidence; 2) whether the statements implicated specific Bill of Rights provisions such as the right to counsel or the right to remain silent; 3) whether the improper statements were an "invited response" to the argument of defense counsel; 4) whether the trial court instructed the jury to disregard the improper statements; 5) whether the defense had and used the opportunity for rebuttal to counter the prosecutors' statements; and 6) the weight of the evidence against the defendant.

*Shepard v. Lane*, 818 F.2d 615, 621 (7th Cir. 1987) (citing *Darden*, 477 U.S. at 181-83).

Before turning to the specific grounds Leal asserts as justifying § 2255 relief, it is important to state that the Court firmly believes, after hearing all the evidence and observing the witnesses and attorneys during the trial, that Leal was given a fair trial. The evidence that he committed the crime was overwhelming, the Court is confident that the Government did not entrap Leal into committing the crime, and counsel on both sides performed competently, ethically, and professionally. None of Leal's specific arguments shows otherwise.

C.    Leal's Specific Challenges

1.    Ground 1:  Defining "Induce"

In Ground 1, Leal argues that his trial counsel was constitutionally ineffective for failing to seek a jury instruction regarding the meaning of "induce" in the statute of conviction, 18 U.S.C. § 2422(b). That statute, in pertinent part, makes it a crime to use a means of interstate commerce to "knowingly persuade[], induce[], entice[], or coerce[]" any person under 18 years old to engage in sexual conduct for which any person could be charged with a criminal offense.

6

Indeed, Leal's indictment charges him with:

> using facilities of interstate commerce, that is a cellphone connected to the
> Internet, [to] knowingly attempt to *persuade, induce, entice, and coerce* an
> individual who had not attained the age of 18 years, to engage in sexual activity
> under such circumstances as would constitute a criminal act under 720 ILCS 5/11-
> 1.60(d) (Aggravated Criminal Sexual Abuse) in violation of 18 United States
> Code, Section 2422(b).

Indictment 1-2 (emphasis added) (No. 19-cr-40069-JPG, Doc. 16).   Leal faults his counsel for

failing to propose a jury instruction to explain the special legal meaning of "induce" that differs

from the ordinary understanding of the term and for failing to request a special verdict form

showing which of the four offending actions—persuading, inducing, enticing, or coercing—was

found beyond a reasonable doubt.

Counsel was not deficient in this regard because the jury was not asked to decide whether

Leal "induced" anyone, only whether he "enticed" someone.   It is true that the Court instructed

the jury about the statutory language set forth above, Court's Instr. No. 2 (No. 19-cr-40069-JPG,

Doc. 113 at 2; Tr. Trans. 126:4-11), and that the jury had the indictment during its deliberations.

Indeed, the word "induce" was in its deliberation universe.   But the Court's instructions were

clear that the critical question for the jury to decide was whether Leal attempted to "entice*"*

someone.   Gov.'s Instr. No. 8 (modified) (No. 19-cr-40069-JPG, Doc. 113 at 19; Tr. Trans.

127:8-128:7) (derived from Pattern Instructions 4.01 (Burden of Proof) and from § 2422(b)).

Whether Leal "induced" anyone simply was not before the jury and was not an issue that needed

any explanation.

In fact, the only time the jury was instructed about "inducement" was in the context of

the entrapment defense.   There, the Court instructed the jury that, in order for the Government to

prove it did not entrap Leal into committing the crime, the Government would have to prove

either that "Government agents did not induce the defendant to commit the offense; or . . . [t]he defendant was predisposed to commit the offense before he had contact with government agents."   Def.'s Instr. No. 1 (No. 19-cr-40069-JPG, Doc. 113 at 28; Tr. Trans. 130:20-131:1). That instruction came along with its own definition of "induce."   Def.'s No. 2 (modified) (No. 19-cr-40069-JPG, Doc. 113 at 29-30; Tr. Trans. 131:3-132:12).   In fact, the word "induce," or different forms of it, were used in front of the jury exclusively in connection with the Government's burden to prove Leal was not entrapped.[1]   All other references to "inducement" were outside the presence of the jury (Tr. Trans. 102-08; 118:15).   In fact, an additional instruction defining the term "induce" would have only confused the jury.   Thus, counsel's failure to seek an instruction further defining "induce" was not deficient performance.

As a whole, the instructions were sufficient and did not need further definition of any term.   Jury instructions are proper if they are adequately supported by the record and are fair and accurate summaries of the law.   *United States v. Peterson*, 823 F.3d 1113, 1123 (7th Cir. 2016). Leal has not argued that Government's Instruction Number 8 (modified) was not an accurate summary of what the jury needed to decide in order to find him guilty.   He simply thinks they should have been told more.   But no further instruction defining "entice," the relevant term, was necessary since it was not a mistake for the jury to apply the ordinary meaning of the term. *United States v. Rossi*, No. 21-3165, 2022 WL 2237024, *2 (7th Cir. June 22, 2022) (citing *United States v. Clarke*, 842 F.3d 288 (4th Cir. 2016)).   And it was not deficient performance to

---

[1] Leal points to the Government's statement in its response (Doc. 116) to his motion for judgment of acquittal.   In the response, the Government states that it argued to the jury that Leal "enticed and induced" the alleged minor to engage in sexual acts.   A review of the transcript of the Government's closing argument, however, reveals no use of any form of the word "induce" other than in the context of the entrapment defense.

fail to ask for a separate special verdict form.   The jury was presented with one theory—that Leal attempted to "entice" a minor—so there was no need to ensure other avenues in the statute were not used.

This is all true despite *United States v. Hansen*, 599 U.S. 762, 766 (2023).   In that case, the Supreme Court held that a federal criminal statute penalizing a person who "encourages" or "induces" a noncitizen to enter the United States illegally, 8 U.S.C. § 1324(a)(1)(A)(iv), was not unconstitutionally overbroad so as to violate the First Amendment by penalizing protected speech.   *Id.*   It found Congress intended "induce" and "encourage" in their historic specialized legal way to incorporate common-law liability for solicitation and facilitation of crimes, not merely speaking in a way that could promote the cause of undocumented immigrants.   *Id.* at 774.   In the case at bar, there was no danger of violating the First Amendment for mere speech because a conviction required the completion of a substantial step toward committing a crime, not just talk.   Gov.'s Instr. No. 8 (modified) & Gov.'s Instr. No. 9 (No. 19-cr-40069-JPG, Doc. 113 at 19, 21; Tr. Trans. 127:8-128:25).

In sum, with respect to Ground 1, counsel was not deficient.   Government's Instruction Number 8 (modified) was adequate to present the relevant issues to the jury, and the verdict form clearly showed the jury found Leal committed attempted "enticement," under the ordinary meaning of the word, by taking a substantial step toward committing the crime.   Counsel was well within the bounds of competent performance not to object or request a special verdict form. Furthermore, had counsel done so, the Court would have denied his requests.

### 2.    Ground 2:   Instruction about Government Investigative Techniques

In Ground 2, Leal argues that his trial counsel were constitutionally ineffective and that the Government committed prosecutorial misconduct in connection with the jury instruction

regarding the Government's use of investigative techniques.   That instruction stated:

> You have heard evidence obtained from the government's use of undercover agents and deceptive investigative techniques.   The government is permitted to use these techniques.   You should consider evidence obtained this way together with any—together with and in the same way you consider the other evidence.

Gov.'s Instr. No. 4 (Pattern Instruction 3.19 (Government Investigative Techniques) as read by the Court) (No. 19-cr-40069-JPG, Doc. 113 at 16; Tr. Trans. 125:18-23).

The committee comment to Pattern Instruction 3.19 cautions about using this instruction in certain circumstances where it might convey to the jury the Court's approval of certain Government investigative techniques.   The comment indicates that the instruction should be given "only in the rare case in which questioning or argument, or a statement during jury selection, or some other circumstance arising or existing during trial suggests the impropriety of such techniques."   Pattern Instr. No. 3.19 committee comment.   The committee comment further states that the Court should explain why it is giving the instruction and should give "consideration . . . to rewording this instruction so that it does not implicitly modify or undercut the entrapment instruction."   *Id.* (referring to Pattern Instr. Nos. 6.04 and 6.05).

At trial, the Government proposed Pattern Instruction 3.19 as Government's Instruction Number 4.   In argument to the Court in connection with the entrapment defense, the Government noted that investigating agents had misrepresented to Leal the age of the agent posing as "Corey" and his willingness to have sex with Leal.   In the Government's view, these misrepresentations were permissible as necessary to the sting operation and did not amount to the kind of fraudulent inducement to commit the crime that would show entrapment.   Leal's counsel did not object to Government's Instruction Number 4, so the Court had no occasion to explain on the record its decision to give it.   The Government did not mention the investigative techniques

10

instruction in its closing argument.

On appeal, Leal argued that giving the entrapment instructions and the Government investigative techniques instruction confused the jury and that the Court should have considered rewording the latter instruction as recommended by the committee comments.   The Court of Appeals found that he had waived the argument by not raising it at the trial level when making substantive objections to other instructions.   *United States v. Leal*, 72 F.4th 262, 266 (7th Cir. 2023).   In *dicta*, the Court of Appeals found that Leal's argument would have failed even if the Court had reviewed the matter for plain error because it was not clear under current law that giving both instructions was improper.   *Id.* at 267 n.2.

Leal now faults his trial counsel for waiving objection to the Government investigative techniques instruction where no issue was raised in front of the jury about the propriety of the Government's investigative conduct, where the instruction undercut Leal's criticism of the management of the investigation, where the Court did not explain on the record why it was giving the instruction, and where Leal was attacking Special Agent Carter's credibility and asserting an entrapment defense.   This failure, Leal notes, prevented his appellate counsel from raising the issue for full review on appeal.   Leal also faults the Government for proposing the instruction despite the concerns in the committee comments.

a.   Plain Error

The Government's primary argument is that, if giving the Government investigative techniques and entrapment instructions would not have survived plain error review on direct appeal, *see Leal*, 72 F.4th at 267 n.2, it cannot be ineffective assistance of counsel.   Indeed, the plain error review standard for whether an error affects a defendant's substantial rights is comparable to the prejudice requirement under *Strickland*.   *Resnick v. United States*, 7 F.4th

611, 623 (7th Cir. 2021) (citing *Swanson v. United States*, 692 F.3d 708, 717 (7th Cir. 2012)). In other words, if counsel's conduct cannot survive plain error review because it did not affect the defendant's substantial rights, that conduct could not have prejudiced the defendant under an ineffective assistance of counsel analysis.

The Court hesitates to adopt the Government's argument in the circumstances presented. The Court of Appeals' statement about counsel's failure to object to giving all three instructions was *dicta* in a footnote without significant development.   The decision rested on waiver, not plain error.   Plain error requires this:

> [B]efore an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'   If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'

*Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993).   In Leal's case, the explanation of any plain error review suggested that the assessment rested on the fact that counsel's mistake, if it was one, was not an "obvious" error that was "clear under current law."   *Leal*, 72 F.4th at 267 n.2 (citing *United States v. Natale*, 719 F.3d 719, 731 (7th Cir. 2013)).   That is, any error was not "plain."   The Court of Appeals said nothing about whether the error affected Leal's substantial rights, which is what usually equates with prejudicing the defendant.   *Olano*, 507 U.S. at 734-35; *see United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (Rule 11 colloquy error).   There was simply no statement on direct appeal about prejudice of the alleged error.

b.    Prejudice

Nevertheless, Leal has failed to carry his burden of demonstrating he was prejudiced by counsel's failure to object to Government's Instruction No. 4.   To the extent Leal argues his

counsel should have requested the Court reword Government's Instruction Number 4, he has failed to propose an alternate wording.   When a § 2255 petitioner claims his counsel failed to make an objection or argument, he must specify the objection or argument counsel should have made and explain how it would have had a reasonable chance of changing the outcome of the trial.   It is his burden to show prejudice from counsel's performance.   *See Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003); *see, e.g., United States v. Stuart*, 773 F.3d 849, 852-53 (7th Cir. 2014) (no showing that failure to recall Government's witness prejudiced case).   Leal has not proposed an alternate wording that had a reasonable chance of changing the outcome of the trial.

Turning to Leal's argument that counsel should have objected to giving Government's Instruction Number 4 at all, he has likewise not shown prejudice.   Leal speculates that the jury might have been confused by the Court's giving both Government's Instruction Number 4 and Defendant's Instructions Number 1 and 2 (modified).   Leal has not explained how any confusion-generating conflict in the instructions had a reasonable probability of changing the jury's verdict.

As noted above, the evidence of enticement before getting to the entrapment defense was overwhelming.   As to entrapment, the Court instructed the jury that to find Government inducement, the jury had to find conduct that "creates a risk a person who would not commit the crime if left to his own devices will do so in response to the efforts of the agent or agents." Def.'s Instr. No. 2 (No. 19-cr-40069-JPG, Doc. 113 at 29; Tr. Trans. 131:3-132:12). Alternatively, the jury could find that Leal was predisposed to commit the crime, that is, "he was ready and willing to commit the crime and likely would have committed it without the intervention of the agent; or he wanted to commit the crime but had not yet found the means."

13

*Id.*   It is perfectly reasonable to assume that the jury reconciled all of the instructions given by understanding that the Government can use undercover agents or other deceptive techniques but that it entrapped Leal if those techniques would have induced him to commit the crime where he would not have done so if left to his own devices and without the intervention of the Government.   Where it is not prohibited to give the instructions together, *Leal*, 72 F.4th at 267, n.2, Leal needs to explain why doing so had a reasonable possibility of changing the jury's verdict.   He has not done so.

In fact, reviewing the trial as a whole, the Court finds that changing or omitting the Government investigative techniques instruction would not have had a reasonable chance of leading to a different result.   The jury was presented with phone chat transcripts showing exactly what Special Agent Carter, posing as "Corey," and Leal said in those interactions.[2] Those conversations gave the jury a basis for assessing whether there was enticement by Leal, inducement by Special Agent Carter, exactly how reticent Leal was to engage in sex with "Corey," and the nature of that reticence.   The jury also listened to a recorded interview of Leal in which he said that he knew showing up to meet with a 15-year-old boy for oral sex was wrong, that he knew he should not have, and that he understood what he did was illegal.   He also confirmed the accuracy of the Grindr chat that had occurred that evening.

Defense counsel also vigorously argued weaknesses in the investigation.   One weakness was that the Government had not shown the earlier unpreserved Grindr messages that may have contained evidence of entrapment, for example, reticence to proceed once a fictional minor's age

---

[2] Previous interactions between an agent posing as 15-year-old "Clay" and Leal were not preserved and were not accessible later because Grindr had banned the "Clay" account and Leal had deleted his own record of those exchanges.

was revealed.   Another weakness was the lack of video surveillance of the house where "Corey" reported he was and the lack of evidence Leal would have actually entered the house.   The jury knew about these weaknesses thanks to excellent argument by defense counsel, yet still found the Government did not induce Leal to do anything he would not otherwise have done without Government agents' conduct.   Furthermore, no instruction prevented the jury from finding conduct the Government was "permitted to use" under Government's Instruction Number 4 could also serve as a basis for the distinct question of entrapment.   In the face of such evidence, argument, and instruction, there is no reasonable probability that the jury would have interpreted and weighed the evidence differently without the Government investigative techniques instruction (or with a modified instruction) and that, instead, they would have acquitted Leal of the charge.

### c.     Prosecutorial Misconduct

Leal asserts the Government committed misconduct when it even proposed the unmodified instruction.   He points to the fact that in a trial of another defendant on a similar charge, the Government offered and then withdrew the same instruction after the defense objected, and in that trial, the defendant was acquitted.

There is nothing improper about offering an instruction in one case while withdrawing it in another, even when both cases involve the same charged offense.   Each case has its own facts, and the Government makes its litigation decisions based on those facts.   And where no law prohibits the giving of Pattern Instruction 3.19 with the entrapment instructions, is it not misconduct to offer it.   Doing so does not "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (internal quotations omitted).

15

3.    <u>Ground 3:   Closing Arguments</u>

In Ground 3, Leal argues that the Government committed prosecutorial misconduct in violation of his Fifth Amendment due process rights during its closing argument when it invoked the petitioner's socioeconomic status and a personal opinion of Leal's character to inflame the jury's passions against him.   He criticizes his counsel for failing to object to the Government's argument and by failing to request a limiting instruction to confine character evidence to the question of predisposition to commit the charged offense, all of which he believes violated his Sixth Amendment right to effective assistance of counsel.

When evaluating a claim of prosecutorial misconduct because of a prosecutor's comments, the Court first asks whether the comments were improper in isolation, then asks whether the comments, in the context of the whole record, denied the defendant a fair trial. *United States v. Gustafson*, 130 F.4th 608, 617 (7th Cir. 2025); *see United States v. Clark*, 535 F.3d 571, 580 (7th Cir. 2008) ("If it was improper, we next consider whether it prejudiced the defendant.").

In the latter inquiry, the Court considers:

(1) whether the prosecutor misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the remark; (4) whether the district court provided (and the efficacy of) a curative instruction; (5) whether the defendant had an opportunity to rebut the remark; and (6) the weight of the evidence against the defendant.

*Clark*, 535 F.3d at 580-81.   "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned.   The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Washington*, 417 F.3d 780, 786 (7th Cir. 2005) (internal quotations and citations omitted).

16

The Court turns to the two statements in the Government's closing argument about which Leal complains.

a.   <u>Socioeconomic Status</u>

In the Government's main closing argument, the prosecutor made the following argument to the jury:

> So the final element that we have to talk about over the next couple of minutes is the entrapment element, Element Number 5 in that backbone instruction, and then, once again, that Element Number 5 refers to a much longer or a long instruction that is also in the packet.   And during—and as part of that instruction, Judge Gilbert told you that a government agent induces the defendant to commit a crime if the agent solicits the defendant to commit the crime and does something in addition that could influence a person to commit a crime that the person would not commit if left to his own devices.
> So, what does that mean?   That means the Government entraps someone if they cause the defendant to do something that he did not want to do.   And the evidence in this case shows that the Government did not cause the defendant to do anything he didn't already want to do.   If you look at—if you look at the Government's Exhibit in this case, during his confession and during the chat sessions, it's obvious the defendant knew what he was doing was wrong.   He just didn't care.
> It also came out during his success—during his interview in Government's Exhibit 2 is that he wasn't some lamb in the woods.   He wasn't someone who the government agents could easily take advantage of.   *He was a successful, educated businessman and a restaurant owner in Marion, Illinois, with arguably the largest and most popular restaurant in Marion, Illinois*.

Trial Tr. 143:17-144:18 (No. 19-cr-40069-JPG, Doc. 118 at 34-35; Tr. Trans. 143:17-144:18) (emphasis added).

Leal assets that his education level and business success were irrelevant to the question of entrapment and that the Government used those characteristics to bias the jury against him. They were not irrelevant, and the Government's reference to those personal characteristics was proper.   The Government is "free to invite the jury to draw a particular inference from [the] evidence."   *United States v. Collins*, 223 F.3d 502, 511 (7th Cir. 2000).   It was in evidence that Leal had been to college and that he was part owner of a large, successful restaurant in Marion,

17

Illinois.   In highlighting these characteristics, the Government was asking the jury to infer from the evidence that Leal was a savvy, discerning man who was not easily tricked into doing something he would not ordinarily be inclined to do.   This is relevant to his entrapment defense, that is, whether the Government was able to induce him to commit a crime that he would not have committed if left to his own devices and whether he was predisposed to commit that crime. If he were not easily led, it would be less likely that the Government could induce him to commit a crime.   Asking the jury to draw such an inference was proper.

> b.    <u>Personal Opinion</u>

Leal objects to the Government's statement in the following portion of its main closing argument:

> And there was also—and this is probably the point where I will end this section of my closing argument—but there was kind of a telling exchange, *which I didn't notice the first couple of times I listened to it, but there is a telling exchange which indicated to me, anyway, that this was not the defendant's first time where he had gone out and had recruited someone for sex on Grindr who was on the borderline at least of being a minor.*
> (Government's Exhibit 2 played).
> It's our position that that "as far as I know" is kind of a telling statement.   This defendant was using Grindr, he said, for two or three years.   He was using it, it appears to be with at least he didn't know if it was minors, but it doesn't appear that he cared. He said "as far as I know."   He sort of admits that he is having sex with people on the borderline of that age, and it gets back to my statement the Government did not entrap the defendant because he just didn't care.

Trial Tr. 145:10-146:2 (No. 19-cr-40069-JPG, Doc. 118 at 36-37; Tr. Trans. 145:10-146:2)

(emphasis added).   The recording in Exhibit 2 contained the following exchange:

Agent Bendoraitis:    Was this your first time?

Jorge Leal:    Um with a minor?

Agent Bendoraitis:    Yes.

Jorge Leal:    Ahh, as far as I know, ya.

Gov.'s Resp. Ex. 3 at 31 (Doc. 5 at 31).

Leal argues that the italicized language above improperly offered the prosecutor's
personal opinion about certain a statement Leal made in his interview with law enforcement
officers.   Contrary to Leal's assertion, his statement was in evidence through the recordings
played to the jury—and again replayed in the Government's closing argument—of Leal's
interview with law enforcement.   And as noted above, the Government can invite the jury to
draw a particular reasonable inference from that evidence.   Here, the Government was asking
the jury to adopt a nuanced understanding of a piece of evidence that even the prosecutor initially
missed.   The prosecutor's self-deprecation was likely to make the jury feel less bad about
perhaps not appreciating that understanding the first time as well—and perhaps okay about
rejecting it as too nuanced.   It is unfortunate that the prosecutor injected himself unnecessarily
into his plea to the jury, but his plea was, indeed, based on the evidence, and it was not an
impermissible expression of his own personal belief in the defendant's guilt or the credibility of
a witness.   Therefore, it was a proper comment.

Since the foregoing statements by the Government in its closing argument were proper,
defense counsel was not deficient for failing to object to them.   Even if they had been improper,
whether to object to a statement in a closing argument is often a matter if trial strategy.   *United
States v. Driver*, 798 F.2d 248, 255 (7th Cir. 1986).   Counsel may have weighed the harm done
by the statements against the harm of calling attention to them and decided that letting them go
without objection better served the defendant's interests.

Furthermore, neither of the statements improperly prejudiced the jury.   Both accurately
stated the evidence, and neither implicated any specific right of the defendant such as, for
example, his right not to testify.   As for the defendant's inviting the statements, in his opening

19

statement, defense counsel stated that Leal was not interested in having sex with a minor, that a Government agent insisted that Leal join the fictitious minor in sex, and that a Government agent enticed Leal to have sex with a minor—in essence, it suggested entrapment.   The Government's statements in its closing argument were aimed at that theory of the defense.

Because the Government made the statements in its main closing argument, as opposed to its rebuttal, Leal had an opportunity in his own closing argument to rebut the statements. Indeed, Leal's counsel addressed the Government's argument about Leal's not knowing he had done anything before with a minor, but counsel likely did not highlight either argument to the jury for fear of calling attention to the Government's position.   Most importantly, the Government's statements in its closing argument were insignificant in light of the overwhelming evidence against Leal, including his own recorded admissions to law enforcement officers.

To the extent Leal objects to counsel's failure to seek a limiting instruction, that was not deficient performance.   The committee comment to Pattern Instruction 6.05 recommends, but does not mandate such an instruction.   Such an instruction would have highlighted the Government's statements when it was reasonable trial strategy to try to minimize them in the jury's mind.   Further, in light of the strong evidence against Leal and the Court's giving Pattern Instruction 2.01 (instructing the jury that the lawyer's statements and arguments are not evidence), there is no reasonable chance that a limiting instruction would have had changed Leal's conviction.

For the foregoing reasons, the Government's closing arguments and defense counsel's performance relating to those arguments do not warrant § 2255 relief.

    4.   <u>Ground 4:   Unanimity</u>

In Ground 4, Leal makes several arguments that his counsel was constitutionally

20

ineffective because he did not demand unanimity of the jury.

a.     Element of the Offense

In the first instance, he argues that his counsel was deficient for failing to request an instruction requiring the jury to unanimously agree on the statutory element—attempted persuasion, enticement, inducement or coercion of a minor—committed by Leal.   Leal also faults his counsel for failing to request a special verdict form or a poll of the jury.

As noted above, while the Court informed the jury that Leal was charged in an indictment naming all four elements in the alternative, the elements instruction required the jury to unanimously find the single element of attempt to entice before it could convict Leal.[3]   Gov.'s Instr. No. 8 (modified) (No. 19-cr-40069-JPG, Doc. 113 at 19).   Any further instruction for unanimity regarding the statutory element, or a special verdict form confirming the element found, would have been superfluous and could have confused the jury.   Furthermore, the Court *did* poll the jury after it returned a verdict to confirm that each juror had agreed to the verdict. Trial Tr. 160-62 (Doc. 118 at 51-53).   In sum, the elements instruction given was a correct statement of the law, and the jury's verdict proves that it unanimously found Leal had committed the elements of attempt to entice.   Counsel was not deficient for failing to ask for more.

b.     Substantial Step

Leal also argues counsel was deficient for failing to request instructions requiring unanimity on the "substantial step" taken toward attempting to entice a minor, element 4 in the elements instruction.   Gov.'s Instr. No. 8 (modified) (No. 19-cr-40069-JPG, Doc. 113 at 19).

---

[3] Additionally, the Court reiterated in other places the need for unanimity in its closing instructions:   Court's Instruction Numbers 11 and 12 (No. 19-cr-40069-JPG, Doc. 113 at 11-12) (Pattern Instructions 7.02 (Verdict Form) and 7.03 (Unanimity/Disagreement Among Jurors)).

He argues that the jury may have thought he took a substantial step toward one of the other alternate elements of the statute—like inducing rather than enticing—which would have deprived him of a unanimous verdict.   But the answer again rests in the elements instruction, which specifically required the jury find Leal took "a substantial step toward committing the crime of *attempted enticement of a minor*."   Trial Tr. 127:19-20 (No. 19-cr-40069-JPG, Doc. 118 at 55) (emphasis added).

To the extent Leal raises the question of whether counsel should have asked for an instruction requiring unanimity on the specific "substantial step" taken, Leal has not pointed to any caselaw showing the jury needed to make such a finding.   *See United States v. Hofus*, 598 F.3d 1171, 1176 (9th Cir. 2010) (jury need not agree on specific "substantial step"); *see also United States v. Griggs*, 569 F.3d 341, 344 (7th Cir. 2009) (in conspiracy context, no need to agree on specific "overt act").   Counsel cannot be deficient for failing to ask for an instruction the law did not require at the time.[4]

Further, in this case, a "substantial step"—traveling to the prearranged meeting place, *see United States v. Berg*, 640 F.3d 239, 250 (7th Cir. 2011)—was so salient and was supported by such overwhelming evidence that there is no reasonable probability that, had the jury been

---

[4]      Leal also invokes *United States v. Christophel*, 92 F.4th 723 (7th Cir. 2024), to help him. There, the Court of Appeals for the Seventh Circuit held that one of the sentences in the instruction defining what it means to attempt to commit enticement—also in Leal's case as Government's Instruction Number 9—could have confused the jury because it suggested that it could find the defendant guilty if he had *unintentionally* caused the minor to consent to illegal sexual activity.   *Id.* at 727.   However, the Court of Appeals found that the instruction a whole did not misstate the law because its first sentence "described the offense as 'knowingly' taking a substantial step with the 'intent to commit enticement of a minor,'" and left no room for unintentionally causing the minor to consent.   *Id.*   Leal does not explain how *Christophel* impacts his case, but the Court finds that even if it did, *Christophel* was not decided until well after Leal's trial, so counsel cannot be faulted for failing to anticipate its holdings and recommendations.

instructed on the need to agree on the substantial step, they would have failed to unanimously agree on that specific substantial step.

c.   <u>Entrapment</u>

Finally, Leal faults his counsel for failing to request an instruction requiring unanimous agreement on which of the two prongs of the entrapment defense the Government proved beyond a reasonable doubt:   (1) that Government agents did not induce Leal to commit the offense when he would not have committed it absent the Government conduct or (2) that Leal was predisposed to commit the offense before he had contact with Government agents.   He argues the Government focused on proving there was no inducement—an argument focusing on the Government's conduct—but then commented on his character by arguing in its closing argument that "he just didn't care" about the age of the person he was meeting—more aimed toward showing he was predisposed.   He suggests evidence of his character improperly conflated two completely separate issues, thereby confusing the jury.

Counsel was not deficient for offering a pattern instruction approved by the Seventh Circuit Court of Appeals and failing to ask for a different instruction requiring unanimity on whether the Government proved the "no inducement" or "predisposition" prong of the entrapment defense.   Leal has not pointed to any caselaw showing the jury needed to make such a finding, and while a pattern instruction is not guaranteed to be correct, failing to object to it, at least in this case, is well within the realm of reasonable performance.   An instruction requiring unanimity regarding the entrapment prongs was not required by the law at the time, so counsel was not deficient for failing to make such an argument or ask for a special verdict form or a jury poll to confirm the jury's finding.   Further, the evidence was overwhelming that Leal was predisposed to commit the charged crime *and* that the Government did not overreach in

23

influencing him to commit the crime.   It simply presented the opportunity, and Leal took it.

Finally, the Court notes that Leal's view of the two prongs as completely distinct is not correct.   "[A]lthough the defense has two distinct elements—government inducement and lack of predisposition—the elements are conceptually related."   *United States v. Mayfield*, 771 F.3d 417, 430 (7th Cir. 2014) (*en banc*) (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988)); *see United States v. Anderson*, 55 F.4th 545, 553 (7th Cir. 2022) (noting that the two entrapment defense elements are closely related).   They are related because "[t]he nature of the government inducement is 'significant chiefly as evidence bearing on predisposition:   the greater the inducement, the weaker the inference that in yielding to it the defendant demonstrated that he was predisposed to commit the crime in question.'"   *Mayfield*, 771 F.3d at 437 (quoting *United States v. Hollingsworth*, 27 F.3d 1196, 1200 (7th Cir. 1994) (*en banc*).   For example, the defendant's reluctance to commit the crime and his conduct after the initial contact with Government agents may be evidence relevant to predisposition.   *Mayfield*, 771 at 437.   Further, reluctance can prompt further Government persuasion that can rise to the level of inducement. *Anderson*, 55 F.4th at 553.   "Each factor on lack of predisposition, including reluctance, helps estimate how likely it was the defendant would have committed the crime if left to his own devices."   *Id.*

Here, Leal's character was relevant to his predisposition to commit the crime before contact with Government agents as well as the "no inducement" prong.   In considering the "no inducement" prong, the Court asked the jury to assess what Leal would have done "if left to his own devices" absent contact with Government agents and whether the Government contact was of a nature and quantum to influence Leal to do something he would not otherwise have done. The Government asked the jury to conclude that Leal did not care about the age of his sexual

24

partners and suggested that he would have had sex indiscriminately with minors and adults "if left to his own devices."   Thus, the Government suggested, there could be no improper Government influence to induce Leal to do something he would not have done without the Government contact because he was likely already doing it.   This concept lies at the intersection of the "predisposition" and "no inducement" prongs of the entrapment defense.

For the foregoing reasons, Ground 4 does not warrant § 2255 relief.

5.    Ground 5:   Discriminatory Enforcement

In Ground 5, Leal argues that the Federal Bureau of Investigation ("FBI") investigated and referred his case for prosecution because of his sex and sexual orientation.[5]   Leal asserts violations of his Fifth Amendment due process rights (incorporating Fourteenth Amendment equal protection rights) by the FBI's use of Grindr, a website focused on men seeking other men for sex, to intentionally attract male suspects rather than female, based on their sexual orientation.   This is especially true, Leal argues, because FBI agents believed adult gay men tended to get sexual in their messages sooner than others in the community.   He also argues his counsel was constitutionally ineffective in violation of his Sixth Amendment rights by failing to object to the discriminatory investigation and referral.   Contrary to the Government's view, the Court does not construe this as a request for discovery in this § 2255 proceeding but as a complaint about the FBI's investigation methods and his counsel's failure to object to them.

Selective enforcement is the moniker given to claims like Leal's that a law enforcement agency's investigative or referral decisions were unduly discriminatory.   *See United States v. Davis*, 793 F.3d 712 (7th Cir. 2015) (selective enforcement based on race); *United States v. York*,

---

[5]    Importantly, he is not challenging the United States Attorney's decision to prosecute this case once the FBI referred it for prosecution.

No. 20-cr-40050-JPG, 2021 WL 1062241, at *3 (S.D. Ill. Mar. 18, 2021) (based on sex).   It is clear that where law enforcement agencies discriminate in who they investigate or refer to the United States Attorney for prosecution, they may violate constitutional equal protection guarantees.   *Davis*, 793 F.3d at 720.   Unlike prosecutors, investigators are not protected by executive privilege and are not afforded the presumption of honest and constitutional conduct like prosecutors are when probable cause exists.   *Id.*; *see Conley v. United States*, 5 F.4th 781, 791 (7th Cir. 2021).

When faced with a charge of selective enforcement, *Davis* instructs the Court to begin by asking whether there was any reason to believe that the impermissible factor (race, sex, *etc.*) played a role in the investigation.   *Id.* at 722.   If there is, the Court might take evidence from the investigating agency *in camera*.   *Id.* at 723.   If there is reason to believe a factor was impermissibly considered in investigatory decisions, the Court must "determine whether forbidden selectivity occurred or plausibly could have occurred.   If not, there would not be a basis to attribute this prosecution to the defendants' race [or sex/sexual orientation]. . . ."   *Id.* at 723.   If so, more information should be gathered with broader discovery.   *Id.*

a.    Counsel's Performance

Leal claims his counsel was constitutionally ineffective for failing to seek discovery on a selective enforcement claim.   However, he has not carried his burden of establishing that reasonable counsel would have believed that Leal's sex or sexual orientation played a role in his investigation or in his referral to the United States Attorney for prosecution.   Although most of the suspects and defendants caught in sting operations on Grindr were gay men, there were many other such sting operations on other websites like Craigslist that do not cater to a single sex or those with a single sexual orientation.   *See, e.g., York*, 2021 WL 1062241, at *1, *7 ("Operation

26

Beach Apple" on Craigslist).   Using Grindr is not a free pass from investigation of activity

conducted there simply because it appeals to a certain segment of the population.   Leal has

pointed to no evidence reasonably suggesting that the FBI's investigations were purposefully

discriminatory on the basis of sex or sexual orientation simply because this one sting was on

Grindr.

Furthermore, Leal has not pointed to any evidence his counsel could have found in

discovery that would have had a reasonable change of changing the result in this case, that is, of

causing the Court to dismiss the indictment because of selective enforcement.   As the Court has

noted above, when a § 2255 petitioner alleges his counsel failed to make an argument, it is his

burden to show what counsel should have argued and explain how such an argument would have

had a reasonable chance of changing the outcome of the case.   *See Fuller v. United States*, 398

F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003).

Similarly, where a § 2255 petitioner claims his counsel failed to investigate something, he must

"provide the court sufficiently precise information, that is, a comprehensive showing as to what

the investigation would have produced" and how what was discovered would have had a

reasonable probability of changing the outcome.   *Richardson v. United States*, 379 F.3d 485,

488 (7th Cir. 2004) (internal quotations omitted); *Hardamon v. United States*, 319 F.3d 943, 951

(7th Cir. 2003) (internal quotations and citation omitted).   He cannot rely on vague allegations

that the investigation was insufficient or would have yielded favorable evidence.   *See

Hardamon*, 319 F.3d at 951.   Without sufficiently precise information of discriminatory criteria

and decisions of the FBI, the petitioner cannot show that constitutionally adequate counsel would

have performed any differently than his actual counsel did or that counsel would have discovered

evidence that would likely have led to a different result.   *See Richardson*, 379 F.3d at 488.

b.    Selective Enforcement

It should go without saying that if Leal cannot show reasonable counsel would have believed that his sex or sexual orientation played a role in his investigation, and if he cannot specify what further investigation would have yielded that would have had a reasonable probability of changing the outcome of this case, he cannot carry his burden of showing that the FBI selectively enforced the law against him.

For the foregoing reasons, Ground 5 does not warrant § 2255 relief.

6.    Other Miscellaneous Arguments

To the extent Leal advances other miscellaneous arguments that the Court has not addressed, they do not warrant § 2255 relief.    Nor do all the asserted grounds cumulatively warrant relief.    As it noted earlier in this order, the Court observed counsel for both sides behaving and arguing vigorously and appropriately with the goal of giving Leal a fair trial.    In looking back on the trial, the Court is certain he got one, and that any errors that might have been made were harmless.    Accordingly, the Court will deny § 2255 relief.

## IV.    Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings and Rule 22(b)(1) of the Federal Rules of Appellate Procedure, the Court considers whether to issue a certificate of appealability of this final order adverse to the petitioner.    A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."    28 U.S.C. § 2253(c)(2); *see Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001).    To make such a showing, the petitioner must "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate

to deserve encouragement to proceed further."   *Ouska*, 246 F.3d at 1046; *accord Buck v. Davis*, 580 U.S. 100, 115 (2017); *Miller-El v. Cockrell*, 537 U. S. 322, 327 (2003).   The Court finds that Leal has not made such a showing and, accordingly, declines to issue a certificate of appealability.

## V.    Conclusion

For the foregoing reasons, the Court **DENIES** Leal's § 2255 motion (Doc. 1), **DECLINES** to issue a certificate or appealability, and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   October 28, 2025**

s/ J. Phil Gilbert_____
**J. PHIL GILBERT**
**DISTRICT JUDGE**